UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CASE NO: 5:02-CV-253-OC-10 GRJ

METROPOLITAN LIFE INSURANCE
COMPANY,

        Plaintiff,

vs.

JOHN BOWE,
KAREN MOORE,

        Defendants.

_____/

## COMPLAINT FOR INTERPLEADER

COMES NOW, Plaintiff, METROPOLITAN LIFE INSURANCE COMPANY (hereinafter "MetLife"), by and through its undersigned counsel, and hereby sues the above-named defendants and states as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Plaintiff, MetLife, is a wholly owned subsidiary of MetLife Inc., a publicly traded corporation organized and existing under the laws of the state of New York, at One Madison Avenue, New York, New York, and is authorized to do business in the state of Florida.

2.     On April 6, 1992, Gertrude Gregory ("the Annuitant") was issued Metropolitan Life Insurance Company Single Deposit Annuity Contract Number M922 5204 ("the Contract"). A copy of the Contract is attached hereto as Composite Exhibit "A." MetLife is the insurer under the Contract and is obligated to make payment to the proper party.

3.      Upon information and belief, John Bowe is a nephew of the Annuitant, residing at 12 Dandiview Acres, Seabrook, New Hampshire  03874.

4.      Upon information and belief, Karen Moore ("Moore") is a stepchild of the Annuitant, whose mailing address is P.O. Box 753, Rowley, Massachusetts  01969.

5.      This Court has subject-matter jurisdiction over this interpleader action pursuant to 28 U.S.C. §1335, in that there is minimal diverse citizenship (New Hampshire, Massachusetts) between the adverse claimants, and the amount in controversy exceeds $500.00.

6.      Venue is proper in the Middle District of Florida, Ocala Division, pursuant to 28 U.S.C. §1391(b) (the district where a substantial part of the events or omissions giving rise to the claim occurred).

### FACTS

7.      The Contract is currently valued at One Hundred Fifteen Thousand Seven Hundred Forty Eight Dollars and Sixty Seven Cents ($115,748.67) in benefits.

8.      Upon issuance of the Contract, the named primary beneficiary was the Annuitant's sister, Eva Bowe, and the contingent beneficiary was John Bowe.  A copy of the beneficiary designation is attached hereto as Exhibit "B."

9.      On February 17, 1997, the Annuitant named John Bowe as the sole beneficiary under the Contract. A copy of the change of beneficiary form is attached hereto as Exhibit "C."

10.     On August 24, 1999, the Annuitant completed a durable power of attorney, pursuant to Fla. Stat. § 709.08, designating her husband, Richard E. Gregory ("the husband"), as her attorney-in-fact.  A copy of the durable power of attorney is attached hereto as "Exhibit D."

11.     On February 5, 2002, the husband, on behalf of the Annuitant, submitted a change

2

of beneficiary form to the Lady Lake, Florida office of MetLife, changing the beneficiaries under the Contract to both Moore and John Bowe. A copy of the change of beneficiary form is attached hereto as Exhibit "E."

12.     Upon information and belief, the Annuitant died on February 6, 2002.[*] Copies of both the original and revised Certificates of Death are attached hereto as Exhibit "F."

13.     The Contract provides that if the Annuitant dies prior to the start of income payments, MetLife will pay the named beneficiary.

14.     Moore has conveyed to MetLife her desire to receive benefits under the Contract. A copy of Moore's July 25, 2002 release letter, agreeing to a split of the Contract's benefits between her and John Bowe, is attached hereto as Exhibit "G."

15.     In a claim form dated July 26, 2002, John Bowe claimed the benefits under the Contract as a designated beneficiary. A copy of his claim form is attached hereto as Exhibit "H."

16.     In a letter also dated July 26, 2002, John Bowe wrote to MetLife that "I am not willing to accept the change of beneficiary form that was filled out by my aunt's husband under the power of attorney on the day before her death and received in your office six days after her death." A copy of the letter is attached hereto as Exhibit "I."

17.     By reason of the actual or potential claims of the interpleading defendants regarding the Contract's benefits, MetLife cannot determine who is the proper beneficiary without exposing itself and the policies at issue to multiple liability.

18.     MetLife is now, and at all times has been, ready and willing to pay the Contract's

---

[*] The Certificate of Death originally listed the Annuitant's date of death as February 5, 2002, but that date was later changed.

3

benefits to the party or parties legally entitled to them.

19.    Since MetLife is a mere stakeholder and claims no beneficial interest in the Contract's benefits, this is an action which arises out of, or is of the nature of, an interpleader, and therefore, said benefits should be placed in the Court Registry pursuant to 28 U.S.C.§1335(a).

20.    MetLife cannot make payment of the Contract's benefits without assuming the responsibility of determining doubtful questions of fact and law and without incurring the risk of being subjected to the potential costs and expenses in defending itself in a multiplicity of suits with a possibility of multiple payment of the amount due.

WHEREFORE, MetLife demands judgment as follows:

A.    Restraining each of the defendants by order and injunction of this Court from instituting or prosecuting any action against MetLife or the Contract in any state or United States Court or administrative tribunal affecting the Contract's benefits on account of the death of the Annuitant;

B.    Requiring the Defendants to answer this Complaint for Interpleader and litigate their claims among themselves for the Contract's benefits;

C.    Requiring that the Defendants settle and adjust among themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the Contract's benefits should be paid;

D.    Permitting MetLife to deposit the amount of the Contract's benefits, One Hundred Fifteen Thousand Seven Hundred Forty Eight Dollars and Sixty Seven Cents ($115,748.67), plus applicable interest, into the Court Registry or as this Court otherwise directs, to be subject to the Order of this Court and to be paid out as this Court shall direct;

4

E.    Discharging MetLife and the Contract, after payment of its admitted liability into the Court Registry, from any and all liability for any part of the benefits payable on account of the death of the Annuitant;

F.    Awarding MetLife its costs and attorney's fees;

G.    Awarding MetLife any and all other and further relief that this Court deems just and proper.

DATED THIS __21ˢᵗ__ DAY OF AUGUST, 2002.


_____
**LEE W. MARCUS, ESQUIRE**
Florida Bar No. 967076
**CHRISTOPHER C. GILBERT, ESQUIRE**
Florida Bar No. 0159050
UNGER, ACREE, WEINSTEIN, MARCUS
MERRILL, KAST & METZ, P.L.
701 Peachtree Road
P. O. Box 4909
Orlando, FL 32802-4909
(407) 425-6880

06/25/2002  16:53     212-578-6447                    METLIFE                                PAGE  02

# MetLife®

# Metropolitan Life Insurance Company

A Mutual Company Incorporated in New York State
One Madison Avenue - New York, New York 10010-3690

## MAX-1
## Single Deposit Annuity

## Cover Page

Your MAX-1 is a single deposit deferred Annuity Contract. It is a legal contract between you and Metropolitan and contains your benefits and rights and your beneficiary's rights in an easy to read Question and Answer format. Please read your Contract carefully.

| | |
|---|---|
| DATE OF CONTRACT: | April 27, 1992 |
| CONTRACT OWNER(S): | GERTRUDE L GREGORY |
| CONTRACT NUMBER: | MS 25204 |
| ANNUITANT: | GERTRUDE L  GREGORY |
| INITIAL INTEREST RATE: | 4.53 % |
| INITIAL INTEREST PERIOD: | Through  04/30/1993 |
| DEPOSIT: | $67,653.00 |
| ADMINISTRATIVE FEE: | None |

**10-Day Right To Examine** — You may return your Contract to Metropolitan or the person through whom you bought it within 10 days from the date you receive it. If you return it within the 10-day period, your Contract will be cancelled from the Date of Contract. We will return the deposit received on your behalf.

Christine N. Markussen
Vice-President and Secretary

Harry P. Kamen
Chairman, President & Chief Executive Officer

35-90                                                                                    P35N90

**EXHIBIT A**

### 1. What do the basic terms used in your Contract mean?

"Account Balance" is the total of your deposit with us plus interest earned on this deposit, minus withdrawals (including any withdrawal charges and administrative fees, if applicable).

"Annuitant" is the measuring life of the annuity contract, the person during whose lifetime an income will be payable if you choose an income plan based on the annuitant's life.

"Code" means the Internal Revenue Code.

"Contract Year" for the first year is measured from the Date of Contract and continues to the last day of the month in which the Contract anniversary occurs. Each new Contract Year begins on the first day of the next month. For example, if the Date of Contract is May 15, 1995, the first Contract Year ends May 31, 1996 and the second Contract Year starts June 1, 1996. The Contract anniversary will be May 15.

"Deposit" refers to the money received by us in this annuity contract.

"Designated Office" is the administrative office for your Contract. It is now the Pension and Saving Center, Metropolitan Life Insurance Company, One Madison Ave., New York, N.Y. 10010. If we change it we will tell you.

"You" and "Your" refer to the owner of this Contract. If there are two owners the terms "You" and "Your" mean both of them or the survivor as the case may be. Either owner can exercise all rights under the Contract unless the owner designation states otherwise.

"We", "Us", and "Our" refer to Metropolitan Life Insurance Company.

### 2. How is interest credited to your Contract?

We credit interest on the deposit from the date we receive it until the earliest of the date you withdraw it, the date we pay it under item 9, or the date income payments start.

The period for which the initial interest rate will be guaranteed is shown on the cover page. After the inital guarantee period a new interest rate will be credited for each new Contract Year. It will never be less than 3%.

The interest rates we declare are "annual effective yields". The actual rates we use on a day-to-day basis are slightly lower, but if the deposit is left in the Contract for a full year it will grow by the full amount of the interest rate we declared, because we compound interest daily.

### 3. Are withdrawals allowed?

Yes. To request a withdrawal you may contact our Designated Office. The minimum withdrawal is $500. Any withdrawal request must be signed by you.

Contract withdrawal charges are imposed on your deposit (and the interest earned on it) for the first seven Contract Years as shown in the following table:

**Withdrawal Charges**

| Contract Year | 1 | 2 | 3 | 4 | 5 | 6 | 7 | [8 & Beyond] |
|---|---|---|---|---|---|---|---|---|
| Withdrawal Charge Percentage | 7% | 6% | 5% | 4% | 3% | 2% | 1% | 0% |

No Contract withdrawal charge will apply:

(a) If it would cause cumulative withdrawal charge to exceed interest earned, i.e., your deposit is guaranteed.

(b) To any withdrawal made to provide income payments for life, or for a period of five years or more if the payment cannot be accelerated.

(c) To any withdrawal of up to 10% of your account balance if it is your first withdrawal during a Contract Year.

For full withdrawals we multiply each amount to which the withdrawal charge applies by the percentage shown above, keep the results as a withdrawal charge and pay you the rest. For partial withdrawals we pay you what you ask for and apply the withdrawal charge by reducing the account balance by a greater amount (the amount not subject to withdrawal charge, plus the amount to which the charge applies divided by 100% minus the percentage shown above).

Example of a Partial Withdrawal: If your first withdrawal request in a Contract Year is for $5,000 and your account balance of $7,000 is subject to a 7% withdrawal charge, we would allow the first 10% ($700) without withdrawal charge. Your account balance would be reduced by a total of $5,323.66 (The $700 free of charge plus $4,623.66 computed by dividing the other $4,300 by 0.93, i.e. one minus 0.07). The withdrawal charge would therefore equal $323.66.

Example of a Full Withdrawal: If your second request in a Contract Year is for a full withdrawal (the termination of your Contract) when your account balance is $25,000 and subject to a 5% withdrawal charge, we would deduct $1,250 as the withdrawal charge and pay you $23,750.

As required by law, we have the right to delay paying any cash withdrawals for up to six months. We do not intend to do this except in an extreme emergency. We would, of course, credit interest during any delay.

**4. Can you assign or transfer your Contract or use it as collateral for a loan?**

Yes. Your Contract may be absolutely or collateral assigned prior to the start of income payments. If your Contract is assigned absolutely, we will treat it as a change of ownership and all rights will be transferred. We are not bound by any assignment unless it is in writing and until it is recorded at our Designated Office. We are not responsible for the validity of any assignment. After income payments start, your Contract may not be assigned and to the extent permitted by law they are not subject to the claims of creditors.

**5. Will dividends be payable on your Contract?**

No, dividends are not paid. All of our additions to your account balance will be made as tax deferred interest.

**6. Are administrative fees deductible from your Contract?**

The administrative fee, if any, for the initial interest guarantee period is shown on the cover page. If none is shown and if an administrative fee will be charged for a future interest period we will tell you in advance. No such fee will be more than $20 a year.

35-90

**7. How can you obtain information about your Contract and its value?**

At least once each Contract Year, before income payments start, we will send you a statement showing your account withdrawal value, account balance, interest credited and withdrawals made. The statement will also contain other information about your Contract.

For other information or service (withdrawal, change of beneficiary, claim forms, etc.) you may contact our Designated Office.

**8. Can we guarantee you an income as long as you live or for a wide choice of other periods?**

Yes. You can receive income payments guaranteed for life on a monthly, quarterly, semiannual or annual basis. These payments may also be guaranteed for at least five years.

Other income plans which provide payments for a stated amount or a stated number of years are also available. The amount of each payment under an income plan must be at least $50.

You may start receiving income payments at any date you choose that occurs after the Date of Contract if you tell us at least 30 days in advance. We will send you information and the necessary forms to sign, upon receipt of your request at our Designated Office. Once income payments start you will not be able to make cash withdrawals or change the choice of income plan.

We will automatically send you information about income plans when you attain age 84. If you do not choose an income plan, make a full cash withdrawal or ask us to continue the Contract by age 85 or 10 years after the Date of Contract if later, we will automatically start income payments on that date, for your lifetime with a guarantee that payments will be made for at least 10 years.

If your date of birth or sex is not correct on the application for your Contract, we will adjust the income payments to agree with your correct age and sex. We may require that you provide proof of age when income payments are to start. We may also require proof that the payee is still alive on the due date of each income payment.

**9. What happens if you or the annuitant dies before income payments start?**

After we receive proof of death and a properly completed claim form, we will pay the account balance (as of the date of settlement) or permit the payee to choose one of our available income plans. We may pay the account balance by placing it in an account that earns interest and to which the payee will have immediate access.

If you die we pay the beneficiary. If you name no beneficiary (or none is alive when you die) we will pay the contingent beneficiary. If you do not name a contingent beneficiary (or none is alive when you die) we will pay your estate. Payment to more than one beneficiary or more than one contingent beneficiary will be divided equally among them, unless the beneficiary designation specifies otherwise. No Contract withdrawal charge will apply.

If you are not the annuitant and he or she dies, we will pay you. If there is more than one owner, payment will be made in equal shares.

If an estate (or other non-individual person) becomes entitled to payment we will pay the entire value of this Contract in a lump sum.

The entire value of this Contract must be distributed in a single sum within five years of your death. If, however, your beneficiary is a natural person, your beneficiary can choose an income plan for life or for a period of years not more than his or her life expectancy. The income payments must start within one year of your death. If Treasury Regulations allow, we may permit our payments to start later.

If your beneficiary is your spouse and you are also the annuitant your spouse may continue the Contract as owner and annuitant (and continue to defer Federal income taxes). If you were not the annuitant, however, then your spouse will automatically become owner and no payment will be made because of your death. If you are the annuitant's spouse you may continue the Contract as annuitant and owner at his or her death.

If there is more than one owner, at the death of the first owner payment will be made to the surviving owner. If the deceased owner's spouse is the surviving owner, then the surviving spouse will become the owner.

**10. What happens if the payee dies after income payments start?**

This depends upon the income plan. Payments may stop, may continue for the remainder of a guaranteed period (if any) or may continue to another person.

**11. Who is your beneficiary and may you change your beneficiary?**

Your beneficiary is the person or persons you name to receive benefits in the event of your death. You may name a contingent beneficiary who would become the beneficiary if all the beneficiaries die before you do.

You may change your beneficiary or contingent beneficiary at any time before income payments start. Ask our Designated Office for our "Change of Beneficiary" form. The change will take effect as of the date you sign the form, but no change will bind us until it is recorded at our Designated Office.

After income payments start, the payee may change the beneficiary for any future guaranteed income payments. If payment is being made over two lifetimes and the other person survives the payee, the survivor can change the beneficiary. The person over whose life payment is being made cannot be changed.

**12. How are the income payments guaranteed for life calculated?**

Life income payments are calculated as shown on page 5. As required by law this shows the lowest payments that we could ever make - we expect our actual payments to be higher. Actual payments will not be less than those that we would provide to a person in the same class under a single payment immediate annuity bought with an equal amount at the time income payments start.

**13. Can you arrange beforehand for income payments to your beneficiary after your death?**

Yes. You can choose an income plan for your beneficiary that we will honor at your death unless the account balance is already being paid under an income plan.

**14. Does your Contract contain all the provisions affecting you?**

Yes, your Contract and any riders and endorsements included in it make up your entire contract with us. We will never contest the validity of this Contract. Changes in its provisions may only be made in writing signed by our President, Secretary or Vice-President. No provision may be waived or changed by any of our other employees, representatives or agents.

To preserve its status as an annuity and comply with Section 72 of the Code, we may interpret and administer this Contract as required by the Code and applicable Treasury Regulations. We may, if necessary, amend this Contract and take other actions without your consent, if necessary. We will notify you of any amendments and, when required, by law, we will obtain your approval and the approval of the appropriate regulatory authority.

35-90                                              4

## Table of Values

(For a Contract without any partial withdrawals and no administrative fee)

| | Table A | | | | Table B | | |
|---|---|---|---|---|---|---|---|
| End of Contract Year | Minimum Account Balance For Each $1,000 of Single Deposit | Guaranteed Account Withdrawal Value For Each $1,000 of Single Deposit | | Payments Starting on Contract Anniversary at Annuitant's Age | Guaranteed Monthly Income For $1,000 of Single Deposit | | |
| | | | | | MALE | FEMALE | UNISEX |
| 1 | $1,045.31 | $1,000.00 | | 59 | $5.34 | $4.78 | $5.01 |
| 2 | $1,076.73 | $1,018.59 | | 60 | $5.63 | $5.14 | $5.28 |
| 3 | $1,109.04 | $1,059.13 | | 61 | $5.94 | $5.41 | $5.57 |
| 4 | $1,142.31 | $1,101.19 | | 72 | $6.27 | $5.70 | $5.87 |
| 5 | $1,176.58 | $1,144.81 | | 63 | $6.62 | $6.01 | $6.20 |
| 6 | $1,211.87 | $1,190.06 | | 64 | $7.00 | $6.34 | $6.54 |
| 7 | $1,248.23 | $1,237.00 | | 65 | $7.40 | $6.69 | $6.93 |
| 8 | $1,285.68 | $1,285.68 | | 66 | $7.83 | $7.06 | $7.32 |
| 9 | $1,324.25 | $1,324.25 | | 67 | $8.28 | $7.46 | $7.75 |
| 10 | $1,363.98 | $1,363.98 | | 68 | $8.74 | $7.88 | $8.20 |
| 11 | $1,404.90 | $1,404.90 | | | | | |
| 12 | $1,447.04 | $1,447.04 | | | | | |
| 13 | $1,490.45 | $1,490.45 | | | | | |
| 14 | $1,535.17 | $1,535.17 | | | | | |
| 15 | $1,581.22 | $1,581.22 | | | | | |
| 16 | $1,628.66 | $1,628.66 | | | | | |
| AGE 73 | $1,176.58 | $1,144.81 | | | | | |
| AGE 78 | $1,363.98 | $1,363.98 | | | | | |

The minimum account balances shown are based on the initial guaranteed interest rate and period shown on the cover page and a guaranteed interest rate of 3% thereafter.

The guaranteed account withdrawal values shown above equal the comparable minimum account balances minus the applicable withdrawal charge.

Values not shown are computed by the same method as that used for the values shown. On request, we will provide the method of computation and values for the years not shown.

The guaranteed monthly income is shown for an income plan with payments for life and a guarantee of payments for at least 10 years.

The guaranteed monthly income figures that are based on unisex rates are applicable only in those states that require the use of unisex rates.

Contract values are at least equal to those required by the state where the Contract was delivered.

Mortality Table - 1983 Table a (Metropolitan Adjusted).

06/25/2002  16:53   212-578-6447          METLIFE                    PAGE  08

## Index

| | Page |
|---|---|
| Administrative Fee | 2 |
| Age and Sex | 3 |
| Assignments | 2 |
| Beneficiary | 4 |
| Computation of Values | 4 |
| Contract and Authority | 4 |
| Death Benefits | 3,4 |
| Definitions | 1 |
| Dividends | 2 |
| Income Payments | 3,4 |
| Information We Give You | 3 |
| Interest | 1 |
| Withdrawals | 1 |

## NOTICE

When you write to us please give us your name, address and Contract number. Please notify us promptly of any changes. We will write to you at your last known address.

Our Board of Directors is elected by our contract holders. For details on how to vote, write to our Secretary at the Designated Office.

Countersigned and Delivered ——————————————— by ———————————————

Metropolitan Life Insurance Company
Home Office:One Madison Avenue, New York, NY  10010-3690

35-90

**MetLife®**

# Metropolitan Life Insurance Company

A Mutual Company Incorporated in New York State
One Madison Avenue, New York, New York 10010-3690

## ENDORSEMENT

This ENDORSEMENT is to be attached to and made part of your contract or certificate.

Notwithstanding anything in the contract or certificate to the contrary, the following is added to the contract or certificate withdrawal provision to read as follows:

"No withdrawal charge under this contract or certificate will apply to the first withdrawal made if either of the following conditions have been met (for which we will require written evidence satisfactory to us): (a) while the owner or his or her spouse is in a Nursing Home and has been in one for at least 90 days in a row; or (b) after it has been determined to our satisfaction that the owner or his or her spouse is terminally ill and expected to die within 12 months.

A Nursing Home means a facility which:

1.  is licensed by the state as a facility to provide skilled or intermediate care;

2.  provides nursing care under the supervision of a physician to persons who do not require the degree of care which a hospital provides but who do require care above the level of room and board;

3.  provides nursing care by or under the direction of a registered nurse or a licensed practical or vocational nurse (LPN or LVN); and

4.  keeps a daily medical record of each patient in conformance with the plan of care.

Nursing Home does not mean a facility or any part of a facility licensed to only offer supervised room and board; shelter care; rest care; training or education; care of the aged or treatment of alcoholism, drug addiction, tuberculosis or mental or nervous disorder."

*Christine N. Markussen*
Christine N. Markussen
Vice-President and Secretary

R.S. 1181  January, 1991                                                P91ENH

04/11/2002  10:10    212-57°-3163

## Application for a Single Payment Deferred Annuity Contract
(PLEASE PRINT—COMPLETE ALL ITEMS)

## MAX 1 & 3

**MetLife**

**1. OWNER**

Name  Gertrude L Gregory

Address  11290 SE 175TH LN

City  Summerfield  State  FL  Zip  32617

Tel. # D/Star  ☐ Evening  904 245 8868

Date of Birth  L  26  24  Sex ☐M ☑F

Social Security # or TIN  024180381

**2. JOINT OWNER (Non-Qualified ONLY)**

Name

Address

City  State  Zip

Date of Birth  Sex ☐M ☐F

Social Security # or TIN

Relationship to Owner

**3. ANNUITANT (If Person named in Part 1 is NOT the ANNUITANT Non-Qualified Only)**

Name

Address

City  State  Zip

Date of Birth  Sex ☐M ☐F

Social Security # or TIN

Relationship to Owner

**4. AMOUNT $**  67,653

**5. CONTRACT TYPE** ☑ MAX 1  ☐ MAX 3

I hereby represent my answers to the above questions to be correct and true to the best of my knowledge and belief.

SIGNATURE X  Gertrude L Gregory

SIGNED AT  Summerfield FL  on  4 6 92

Agent: Will this contract replace any existing annuities or insurance? ☐ Yes ☑ No  (If yes, please attach any required replacement forms.)

Witness  Ch Theobo  266 868 360

Ch Theobo  90R66R 7851

If other than MetLife  Firm name

Please make checks payable to MetLife.  ISSUE COPY RECEIPT

Received of $  for an application to

Firm

Branch District

By

**6. BENEFICIARY**

Primary  Eva J Bove

Address  3 Knollwood

City  Woburn  State  MA  Zip  01801

Relationship to Owner  Sister

Contingent  John  Bove

Relationship to Owner  Nephew

For payment due on the owner's death, if none is named, the owner's estate will be paid. If a contingent dies, and is not the named the owner will be paid.

**7. MARKET** ☑ Non-Qualified  ☐ IRA  ☐ IRA-SEP
IRA, IRA-SEP (MUST Designate Amounts Below)
(Agent and Client see reverse for important information)
By signing below, I irrevocably designate my IRA or SEP Annuity as follows:

Direct Transfer $  Rollover $  67,653

Contribution for Tax Year 19

Tax Year  ANNUITY  ISSUE

**8. REPLACEMENT** (If yes to either question, please state details.)
Will this replace any existing annuity or life insurance?  ☐ Yes ☑ No
Is this an IRC Section 1035 exchange?  ☐ Yes ☑ No

Policy #

Prior Carrier's Name and Address

**9. SPECIAL REQUESTS**  6.25 %

Nicholas D. Latrik
Nicholas D. Latrik
Vice President and Secretary

**MetLife**

Metropolitan Life Insurance Company
One Madison Avenue, New York, N.Y. 10010

PRESTIGE
SAVINGS
CENTER

**EXHIBIT B**

**MetLife**

## FORM A—*Please see the instructions in this booklet before completing.*

**A1** Entry required for ADDR, NAME or OWNR.
(If any information needs to be updated on MetLife's records, please check (✓ or X) the box(es) next to the correct data.)

| ☐ Owner's Name (Print First, Middle, Last) | ☐ Social Security/Tax ID# | ☐ Telephone Number |
|---|---|---|
| Gertrude L. Gregory | 024 18 0381 | 352 245 8868 |

| ☐ Street Address (Include Apt/Floor/PO Box) | ☐ City or Town | ☐ State | ☐ Zip Code |
|---|---|---|---|
| 11240 SE 175 LN | Summerfield | Fl | 34491 |

| Contract/Certificate Number(s) | Annuitant(s) if *not* the Owner(s) |
|---|---|
| M 922 5204 | |

**A2** Entry required to update NAME. (Please do *not* use this section to name a *new* person.)

Please update records to change the name of the: ☐ Owner/Joint Owner  ☐ Annuitant  ☒ Beneficiary  ☐ Contingent Beneficiary

From **Eva J. Bowe** to **John Bowe**

The reason for this change is: ☐ Marriage   ☐ Divorce   ☐ Assumption of new name   ☐ Correction

☒ Other (please specify) **Beneficiary passed away**

**A3** Entry required for OWNR (*Not* available for IRA)

Please change the ownership of the contract/certificate as shown below. In making this request, I understand that this assignment may result in a taxable event for me to the extent the value at the time of transfer exceeds my cost basis in the contract/certificate unless the transfer qualifies as a nontaxable transfer of property between spouses or incident to a divorce.

| Owner—Name (Print First, Middle, Last) | Relationship to Annuitant(s) | Date of Birth | Social Security/ Tax ID# |
|---|---|---|---|
| Street Address (Include Apt/Floor/PO Box) | City or Town | State | Zip Code |
| Joint Owner (in addition to the person named as Owner above)— Name (Print First, Middle, Last) | Relationship to Annuitant(s) | Date of Birth | Social Security/ Tax ID# |
| Street Address (Include Apt/Floor/PO Box) | City or Town | State | Zip Code |

**A4** Entry required for ADDR, NAME or OWNR

| Owner's Signature | Date Signed |
|---|---|
| X *Gertrude L. Gregory* | 2/17/97 |
| Joint Owner's Signature (If needed) | Date Signed |
| | |

| For MetLife's Internal Use | Submitting Sales Office | Servicing Account Representative | Office | Agency | Index |
|---|---|---|---|---|---|
| | L16  Ocala Fl | | LIE | E?? | 3 |

Metropolitan Life Insurance Company
Metropolitan Insurance and Annuity Company

18000104684A (0605) Printed in U.S.A.

**EXHIBIT C**

04/11/2002  10:10    212-57?-3163

# DURABLE POWER OF ATTORNEY

Containing Health Care Surrogate & Pre-Need Guardian Provisions, and Provisions Relating to Transfer of Real Proper
Including Homestead Property (per §709.08 as amended)

BY THIS DURABLE POWER OF ATTORNEY, I, GERTRUDE L. GREGORY, of Marion County, Florida, appoi:
as my attorney-in-fact to manage my affairs as indicated below my husband, RICHARD E. GREGORY.

This durable power of attorney is not affected by my subsequent incapacity except as provided by Florida Statu
Section 709.08, and is exercisable from the date of execution.

1.    GENERAL GRANT OF POWER

I hereby grant to my agent full power and authority to exercise or perform any act, power, duty, right or obligatio
whatsoever that I now have or may hereafter acquire, relating to any person, matter, transaction, or any interest in proper
owned by me, including, without limitation, my interest in all real property, including homestead real property, all person
property, tangible or intangible; all property held in any type of joint tenancy, including a tenancy in common, joint tenanc
with right of survivorship, or a tenancy by the entirety; all property over which I hold a general, limited, or special power c
appointment; choses in action, and all other contractual or statutory rights or elections, including, but not limited to, any righ
or elections in any probate or similar proceeding to which I am or may become entitled; all as to such property now owne
or hereafter acquired by me. I grant to my agent full power and authority to do everything necessary in exercising any of th
powers herein granted as fully as I might or could do if personally present, with full power of substitution or revocation. Excep
as otherwise limited by applicable law, or by this durable power of attorney, my attorney-in-fact has full authority to perforn
without prior court approval, every act authorized and specifically enumerated in this durable power of attorney. I hereby ratif
and confirm that my Agent shall lawfully have, by virtue of this durable power of attorney, the powers herein grantec
including, but not limited to, the following:

    a.    Collect all sums of money and other property that may be payable or belonging to me, and to execut
receipts, releases, cancellations or discharges.

    b.    Settle any account in which I have any interest and to pay or receive the balance of that account as the cas-
may require.

    c.    Borrow money on such terms and with such security as my attorney-in-fact may think fit and to execute al
notes, mortgages and other instruments that my attorney-in-fact finds necessary or desirable.

    d.    Draw, accept, endorse or otherwise deal with any checks or other commercial or mercantile instruments fo
my benefit, specifically including the right to make withdrawals from any savings account or savings and loan deposits.

    e.    Redeem bonds issued by the United States government or any of its agencies, any other bonds and any
certificates of deposit or other similar assets belonging to me.

    f.    Sell bonds, shares of stock, warrants, debentures, or other assets belonging to me, and execute al
assignments and other instruments necessary or proper for transferring them to the purchaser or purchasers, and give gooc
receipts and discharges for all money payable in respect to them. Also, to execute stock powers or similar documents on my
behalf and delegate to a transfer agent or similar person the authority to register any stocks, bonds, or other securities either
into or out of my name or nominee's name.

    g.    Sell, rent, lease for any term, mortgage or exchange any real estate or interests in it, including homesteac
property, for such considerations and upon such terms and conditions as my attorney-in-fact may see fit, and execute.
acknowledge and deliver all instruments conveying or encumbering title to property owned by me alone as well as any owned
by me and by any other person, jointly. If I am married, the attorney-in-fact may not mortgage or convey my homestead
property without joinder of my spouse or my spouse's legal guardian. Joinder by my spouse may be accomplished by the
exercise of authority in a durable power of attorney executed by my joining spouse, and either my spouse or I may appoint the
other as attorney-in-fact.

    h.    My attorney-in-fact herein named and his/her successor(s) are all granted full power and authority to create,
amend, or modify a Qualified Income Trust as authorized by the Omnibus Budget Reconciliation Act of 1993, as amended.

    i.    My attorney-in-fact herein named and his/her successor(s) may transfer assets to an existing Trust created
by me or on my behalf.

    j.    If my attorney-in-fact herein named or his/her successor(s) is also named as a Successor Trustees, under
any Trust created by me, then my attorney-in-fact may also exercise all the Trustee powers granted to me under the terms of
that Trust, including the power to sell, convey, mortgage, lease or otherwise dispose of any real property, or interest in real
property, held by that Trust.

    k.    To represent me before the Treasury Department in connection with any matter involving any federal taxes

**EXHIBIT D**

in which I am a party, to make, sign, execute, verify and file any return required to be made under the revenue laws of the United States, or the Internal Revenue Code, or under the statutes of any state and to file any claim for refund, offer a compromise or application for a closing agreement, receive refund checks, execute waivers of any period of limitation, request extensions of time, execute any waiver of restrictions on assessment for collection of any tax, and execute Petition of Appeal to the United States Tax Court.

l.        My attorney-in-fact herein named and his/her successor(s) are all granted full power and authority to create, amend, or modify any Individual Retirement Account in my name, including the power to change beneficiaries, to begin or increase withdrawals and to do and perform all and every act and thing relating to the management of any Individual Retirement Account

m.       My attorney-in-fact herein named and his/her successor(s) are all granted full power and authority to create, amend, or modify any Life Insurance Policy in my name, including the power to change beneficiaries, to begin or increase withdrawals, to authorize and receive a distribution of cash value, and to do and perform all and every act and thing relating to the management of any Life Insurance Policy.

n.       My attorney-in-fact herein named and his/her successor(s) are all granted full power and authority to handle my Medicare affairs, if I am a Medicare Patient.  Medicare administrators are authorized to release to my attorney-in-fact Medicare information, even that information covered by the Privacy Act.

o.       My attorney-in-fact herein named and his/her successor(s) are all granted full power and authority to access, withdraw from or place articles into any safety deposit box held in my name at any banking, financial or other institution holding such safety deposit box.

<u>Specific Real Estate Powers</u>
        The attorney-in-fact herein named and his/her successor(s) are all granted the authority to sell, to convey, to maintain, to mortgage or to dispose of, the following described property, and to execute any and all documents necessary to effectuate the sale and/or conveyance, and to encumber, and to dispose of, the following described real property, to wit:

        LOT 7, BLOCK L, FLORIDIAN CLUB ESTATES, as per plat thereof recorded in Plat Book 1, Page(s) 106-111, of the Public Records of MARION County, FLORIDA.

and such documents shall include, but not be limited to, contracts, deeds, affidavits, bills of sale, closing statements, mortgages, notes and such other instruments as may be required to carry out the purposes herein expressed, and I, GERTRUDE L. GREGORY, hereby give and grant unto the attorney-in-fact named herein and her successor, said attorney-in-fact, full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises as fully, to all intents and purposes, as I, GERTRUDE L. GREGORY might or could do if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that said attorney-in-fact or her successor, shall lawfully do or cause to be done by virtue hereof.

        The above powers conferred upon my attorney-in-fact extend to all of my right, title and interest in such property as I have described above and in which I may have an interest jointly with any other person, whether in an estate by the entirety, joint tenancy or tenancy in common.

2.       <u>Limitations</u>
Notwithstanding the powers contained in this durable power of attorney, my attorney-in-fact may not:
        a.       Perform duties under a contract that requires the exercise of my personal services;
        b.       Make any affidavit as to my personal knowledge;
        c.       Vote in any public election on my behalf;  or
        d.       Exercise powers and authority granted to me as a court-appointed fiduciary.

3.       <u>HEALTH CARE SURROGATE PROVISIONS</u>
        (Designation of Health Care Surrogate Pursuant to F.S. §§709.08 and 765)
        In the event that I have been determined to be incapacitated to provide informed consent for medical treatment and surgical and diagnostic procedures, I wish to designate as my surrogate for health care decisions, the attorney-in-fact named herein RICHARD E. GREGORY, telephone number: _____.    My capacity to make health care decisions for myself shall be determined by my attending physician by concluding that I lack such capacity, pursuant to the standards set forth in Florida Statute §§765.204.  My capacity to make health care decisions for myself may also be determined by a court of competent jurisdiction.  This designation revokes any prior health care surrogate designation which I may have made.

        I fully understand that this designation will permit my surrogate to make health care decisions and to provide, withhold, or withdraw consent on my behalf; to apply for public benefits to defray the cost of health care; and to authorize my admission to or transfer from a health care facility.

<u>Additional Instructions</u>
        Without limitation on the rights and authority of my Surrogate, my Surrogate may, among other acts and decisions:

Michael D. Millhorn, Attorney-At-Law, Suite 204, 10935 S.E. 177ᵗʰ Place, Summerfield, Florida 34491 (352) 307-2221

a. Have final authority to act for me and to make health care decisions for me in matters regarding my hea care during my said incapacity;

b. Consult with appropriate health care providers to provide informed consent in my best interests as t Surrogate perceives same;

c. Give any consent in writing using the appropriate consent forms;

d. Have access to all of my appropriate clinical records and may authorize the release of information a: clinical records to appropriate persons to ensure the continuity of my health care;

e. Apply for public benefits, including but not limited to, Medicare and Medicaid, for me, and to have acce to information regarding my income and assets to the extent required to make application;

f. Authorize the transfer and admission of me to or from a health care facility;

g. To authorize my discharge, even against medical advice, from any hospital, nursing home, residential car assisted living or similar facility or service;

h. To consent, refuse or withdraw consent to any and all types of medical care, treatment, surgical procedure diagnostic procedures, medication, and the use of mechanical or other procedures that affect any bodily function, includin, but not limited to, artificial respiration, nutritional support and hydration, and cardiopulmonary resuscitation.

i. Withhold or withdraw life-prolonging or death-delaying procedures in accordance with a written declaratio living will or last illness will and testament I may have or will in the future make;

j. Seek Court orders providing for the withholding and withdrawal of life-prolonging or death-delayin: procedures in accordance with a living will or last illness will and testament or declaration I may have made;

k. Do all acts and make all decisions regarding my health care as authorized by law.

My Surrogate shall not be liable or responsible for any costs or expenses of my medical treatment or care except as expressl stated by Statute and my Surrogate's signature on any admission papers for a health care facility shall not make the Surrogat liable or responsible for any costs and expenses incurred for my care at such health care facility, it being understood that th Surrogate acts for me and in my stead, and I, alone, would be liable or responsible for such costs and expenses.

I further affirm that this designation is not being made as a condition of treatment or admission to a health car facility.

4.    STANDARD OF CARE

Except as otherwise provided herein, any attorney-in-fact named herein is a fiduciary who must observe the standard of care applicable to trustees as described in Florida Statute Section709.08. My attorney-in-fact is not liable to third partie for any act pursuant to this durable power of attorney if the act was authorized at the time. If the exercise of the power i improper, my attorney-in-fact is liable to interested persons as described in Florida Statute Section 731.201 for damage or los resulting from a breach of fiduciary duty by my attorney-in-fact to the same extent as the trustee of an express trust. If m: attorney-in-fact has accepted appointment either expressly in writing or by acting under the power, my attorney-in-fact is no excused from liability for failure either to participate in the administration of assets subject to the power or for failure t( attempt to prevent a breach of fiduciary obligations thereunder.

5.    MULTIPLE ATTORNEYS-IN-FACT; WHEN JOINT ACTION REQUIRED

Unless my durable power of attorney provides otherwise;

a. If my durable power of attorney is vested jointly in two attorneys-in-fact by the same instrument, concurrence of both is required on all acts in the exercise of the power.

b.. If my durable power of attorney is vested jointly in three or more attorneys-in-fact by the same instrument concurrence of a majority is required in all acts in the exercise of the power.

c. Any attorney-in-fact who has not concurred in the exercise of authority is not liable to me or any other persor for the consequences of the exercise. A dissenting attorney-in-fact is not liable for the consequences of an act in which the attorney-in-fact joins at the direction of the majority of the joint attorneys-in-fact if the attorney-in-fact expresses such dissent in writing to any of the other joint attorneys-in-fact at or before the time of the joinder.

d. Unless my durable power of attorney provides otherwise, all authority vested in multiple attorneys-in-fact may be exercised by the one or more that remain after the death, resignation, or incapacity of one or more of the multiple attorneys-in-fact.

6.    INTERPRETATION AND GOVERNING LAW

This instrument is executed by me in the State of Florida, but it is my intention that this power of attorney shall be exercisable in any other state or jurisdiction where I may have any property or interests in property.

This instrument is to be construed and interpreted as a durable power of attorney as provided for in Florida Statute Section 709.08, and as a health care surrogate as provided for in Florida Statute section 765, as these statutes may be amended from time to time. The enumeration of specific powers herein is not intended to, nor does it, limit or restrict the general powers herein granted to my Agent. This instrument is executed and delivered in the State of Florida, and the laws of the State of Florida shall govern all questions as to the validity of this power and the construction of its provisions.

7.     <u>THIRD PARTY RELIANCE</u>

a.     Any third party may rely upon the authority granted in my durable power of attorney until the third par has received notice as provided herein.

b.     Until a third party has received notice of revocation pursuant to the terms contained herein, partial complete termination of the durable power of attorney by adjudication of incapacity, suspension by initiation of proceedin to determine incapacity, my death, or the occurrence of an event referenced in this durable power of attorney, the third par may act in reliance upon the authority granted in this durable power of attorney.

c.     A third party that has not received written notice hereunder may, but need not, require that my attorney-i fact execute an affidavit stating that there has been no revocation, partial or complete termination, or suspension of the durab power of attorney at the time the power of attorney is exercised. A written affidavit executed by my attorney-in-fact under th paragraph is attached.

Affiant is the attorney-in-fact named in the durable power of attorney executed by GERTRUDE L. GREGORY c August 24, 1999.

d.     Third parties who act in reliance upon the authority granted to my attorney-in-fact hereunder and i accordance with the instructions of the attorney-in-fact will be held harmless by me from any loss suffered or liabilit incurred as a result of actions taken prior to receipt of written notice of revocation, suspension, notice of a petition t determine incapacity, partial or complete termination, or my death. A person who acts in good faith upon any representation direction, decision, or act of my attorney-in-fact is not liable to me or to my estate, beneficiaries, or joint owners for those act.

e.     My attorney-in-fact is not liable for any acts or decisions made by him or her in good faith and under th terms of the durable power of attorney.

8.     <u>NOTICE</u>

a.     A notice, including, but not limited to, a notice of revocation, partial or complete termination, suspension or otherwise, is not effective until written notice is served upon my attorney-in-fact or any third persons relying upon thi durable power of attorney.

b.     Notice must be in writing and served on the person or entity to be bound by such notice. Service may b by any form of mail that requires a signed receipt or by personal delivery as provided in the Florida Statutes for service o process, and must otherwise be in accordance with Florida Statute Section 709.08.

9.     <u>DAMAGES AND COSTS</u>

In any judicial action regarding this durable power of attorney, including, but not limited to, the unreasonable refusa of a third party to allow an attorney-in-fact to act pursuant to the power, and challenges to the proper exercise of authorit by the attorney-in-fact, per statute, the prevailing party is entitled to damages and costs, including reasonable attorney's fees

10.     <u>VALIDITY</u>

This durable power of attorney shall be non-delegable, except as to the stock powers which may be delegated to transfer agent per paragraph 1.f hereunder, and shall be valid until such time as I shall die, revoke the power, or shall be adjudged to tally or partially incompetent by a court of competent jurisdiction. I may revoke the power only by providing written notice to my Agent. All acts of my Agent taken or done without actual knowledge of 1) my death, 2) an adjudication of my incompetency, or 3) my revocation are valid and effective, and are hereby ratified and confirmed.

11.     <u>REVOCATION OF PRIOR INSTRUMENTS</u>

By this instrument I hereby revoke any power of attorney, durable or otherwise, that I may have executed prior tc the date of this durable power of attorney. I hereby confirm all acts of my attorney-in-fact pursuant to this power.

12.     <u>DECLARATION NAMING PRE-NEED GUARDIAN</u>

(Designation of Preneed Guardian Pursuant to F.S. §§744.3045, as amended)

a.     If I am at any time determined to be an incapacitated person, as that term is defined in the Florida Guardianship Law, as it now exists or may be hereafter amended, I declare that my then serving attorney-in-fact is to serve as the plenary guardian of my property, to exercise all delegable legal rights and powers to preform all tasks necessary to care for my property or estate.

b.     I further declare that my then serving attorney-in fact is also to serve as plenary guardian of my person, tc exercise all delegable legal rights and powers to perform all tasks necessary to care for my person.

c.     I further declare that it is my intent and desire that the above-named attorney-in-fact be appointed by the Court having jurisdiction to serve without bond.

Any act that is done under this power between the revocation of this instrument and notice of that revocation to my attorney-in-fact shall be valid unless the person claiming the benefit of the act had notice of that revocation.

04/11/2002  10:10   212-57° 3163

IN WITNESS WHEREOF, I have hereunto set my hand and seal on this _24_ day of August, 1999.

Signed, sealed and delivered
in the presence of:

_____        _____
MICHAEL D. MILLHORN                     . GERTRUDE L. GREGORY

_____
CHRISTINE S. YOUNGBLOOD

STATE OF FLORIDA
COUNTY OF MARION

     BEFORE ME, the undersigned authority, duly authorized to take acknowledgments and administer oaths, personally appeared GERTRUDE L. GREGORY to me personally known, and known to be the same person described in, who produced a Florida, DRIVER'S License as identification, and who executed the within Power of Attorney, and acknowledged the within Power of Attorney to be her  act and deed.

     SWORN TO BEFORE ME on this _24_ day of August, 1999.

(SEAL)

                                    _____
                                      MARY E. ENGLE
                                      NOTARY PUBLIC

      MARY E. ENGLE
      Notary Public, State of FLORIDA
      My Commission # CC634877
      Expires MAY 31, 2001
      Bonded thru TROY FAIN INSURANCE, INC.

This Instrument Prepared by:
Michael D. Millhorn, Attorney At Law
Michael D. Millhorn, P.A.
Suite 204 - 10935 S.E. 177Th Place
Summerfield, Florida 34491
(352) 307-2221 (800) 743-9732

Michael D. Millhorn, Attorney-At-Law, Suite 204, 10935 S.E. 177ᵗʰ Place, Summerfield, Florida 34491 (352) 307-2221

## ACCEPTANCE AFFIDAVIT

1. Affiant is the attorney-in-fact named in the above Durable Power of Attorney.

2. Affiant hereby accepts the terms of this Durable Power of Attorney.

3. To the best of Affiant's knowledge, after diligent search and inquiry:

    a. The Principal (i) is not deceased; (ii) has not been adjudicated incapacitated, and (iii) has not revoke partially or completely terminated or suspended this Durable Power of Attorney; and

    b. A petition to determine the incapacity of or to appoint a guardian for the Principal is not pending.

4. Affiant agrees not to exercise any powers granted by the Durable Power of Attorney if Affiant attains knowledge that it has been revoked, partially or completely terminated, suspended or is no longer valid because of the death c adjudication of incapacity of the Principal.

RICHARD E. GREGORY
Affiant and Attorney-In-Fact

STATE OF FLORIDA
COUNTY OF MARION

BEFORE ME, the undersigned authority, duly authorized to take acknowledgments and administer oaths, personally appeared RICHARD E. GREGORY to me personally known, and known to be the same person described in, who produced a Florida, DRIVER'S License as identification, and who executed the within Power of Attorney, and acknowledged the within Power of Attorney to be his act and deed.

SWORN TO BEFORE ME on this _24_ day of August, 1999.

(SEAL)

MARY E. ENGLE
NOTARY PUBLIC

MARY E. ENGLE
Notary Public, State of FLORIDA
My Commission # CC634877
Expires MAY 31, 2001
Bonded thru TROY FAIN INSURANCE, INC.

Michael D. Millhorn, Attorney-At-Law, Suite 204, 10935 S.E. 177th Place, Summerfield, Florida 34491 (352) 307-2221

6

04/11/2002  10:10    212-57~ 3163                                    PAGE  06/23

## BENEFICIARY CHANGE FORM

- Name new Owner's beneficiary and/or new Owner's contingent beneficiary
- Must accompany Form A when naming new Owner/Joint Owner (NQ)

*Please see the Instructions before completing.*

**MetLife®**

**B1** Entry required for BENE.

(If any information needs to be updated on MetLife's records, please check (✓ or X) the box(es) next to the correct data.)

| ☐ Owner's Name (Print First, Middle, Last) | ☐ Social Security/Tax ID# | ☐ Telephone Number | |
|---|---|---|---|
| Gertrude L. Gregory | 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 | | |
| ☐ Street Address (Include Apt/Floor/PO Box) | ☐ City or Town | ☐ State | ☐ Zip Code |
| 11290 SE 175th Lane | Summerfield | FL | 34491 |
| Contract/Certificate Number(s) | Annuitant(s) if *not* the Owner(s) | | |
| M9225204 | Gertrude L. Gregory | | |

**B2** Entry required for BENE.

(Note: This section does *not* change the beneficiary of an Annuitant who is *not* the Owner.)

I revoke any prior choice of the beneficiary and contingent beneficiary to receive any amount payable under the contract/certificate on account of my death. I also revoke any prior choice of an optional income plan that applies to any amount payable under the contract/certificate on account of my death. I name the following revocable beneficiary to receive any amount payable at death:

| Owner's Revocable Beneficiary—Name (Print First, Middle, Last) | Relationship to Annuitant(s) | Date of Birth | Social Security/Tax ID# (Helps in any later claim) |
|---|---|---|---|
| John Bowe | Nephew | | |
| Karen Moore | Step-daughter | 12-13-47 | 029 38 6381 |
| Street Address (Include Apt/Floor/PO Box) | City or Town | State | Zip Code |
| PO Box 753, Rowley, MA 01969 | Rowley | MA | 01969 |

If the beneficiary named above predeceases me, I name the following revocable contingent beneficiary to become the beneficiary. If no beneficiary is alive when I die, my estate is to receive any amount payable.

| Owner's Revocable Contingent Beneficiary— Name (Print First, Middle, Last) | Relationship to Annuitant(s) | Date of Birth | Social Security/Tax ID# (Helps in any later claim) |
|---|---|---|---|
| | | | |
| Street Address (Include Apt/Floor/PO Box) | City or Town | State | Zip Code |
| | | | |

If more than one beneficiary is alive when I die, they will be paid in equal shares, unless otherwise noted. When there are two or more Owners, this designation applies to any amount payable at the death of the last Owner to die.

**B3** Entry required for BENE

| Owner's Signature | Date Signed |
|---|---|
| Gertrude L Gregory  Richard Gregory, POA | 2/5/02 |
| Joint Owner's Signature (if needed) | Date Signed |
| | |

| Witness Signature (Massachusetts Only) | Date Signed | | |
|---|---|---|---|
| Cynthia R. Wise | 2/5/02 | | |

| For MetLife's Internal Use | Submitting Sales Office | Servicing Account Representative | Office | Agency | Index |
|---|---|---|---|---|---|
| | 81J-1 Ladylake, FL | | 81J-1 | 871 | 1 |

18000104684B (1098) Printed in U.S.A.                    Metropolitan Life Insurance Company, New York, NY

**EXHIBIT E**

OFFICE of VITAL STATISTICS

CERTIFIED COPY

AMENDED 3-5-02

CERTIFICATE OF DEATH
FLORIDA

Gertrude

Gregory

0 2   0 1 4 5 5 1

Florida

Sumterfield

Marion

Ocala

Summerfield

Married

White

11299 S.E. 175 Lane, Summerfield, Florida 34491

Richard Gregory

Dunnellon Crematory

5760 South Pine Avenue
Ocala, Florida

Munroe Regional Medical Center

January 26, 1924

February 5, 2002

FEB 07 2002

AFFIDAVIT OF AMENDMENT TO MEDICAL CERTIFICATION OF DEATH
FLORIDA

Gertrude

Gregory

02-014551

Munroe Regional Medical Center
Ocala

AMENDED MEDICAL CERTIFICATION

The date of death was typed February 5, 2002 and should have been
February 6, 2002.

EXHIBIT F

THIS IS A CERTIFIED TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE

BY

MAR 05 2002

State Registrar

WARNING:

9164749

THIS DOCUMENT IS PRINTED OR PHOTOCOPIED ON SECURITY PAPER WITH A WATERMARK OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARK.

THE DOCUMENT FACE CONTAINS A MULTI-COLORED BACKGROUND AND GOLD EMBOSSED SEAL. THE BACK CONTAINS SPECIAL LINES WITH TEXT AND SEAL IS THERMOCHROMIC INK.

CERTIFICATION OF VITAL RECORD

HEALTH

## GENERAL RELEASE

WHEREAS, Gertrude L. Gregory was the Contract Owner of a Max-1 Single Deposit deferred Annuity, Contract Number M9225204 (the "Contract"), issued by Metropolitan Life Insurance Company ("MetLife"); and

WHEREAS, the original sole beneficiary under Gertrude Gregory's Contract was her nephew, John Bowe; and

WHEREAS, on February 5, 2002, Mr. Gregory, as attorney-in-fact under a Power of Attorney executed by Gertrude Gregory, submitted a Beneficiary Change Form to request a change in the beneficiary designation under the Contract to add his daughter and Gertrude Gregory's stepdaughter, Karen Moore, as a joint beneficiary with John Bowe, to share in the death benefit proceeds 50/50; and

WHEREAS, Gertrude Gregory died on February 6, 2002; and

WHEREAS, the Beneficiary Change Form was received by MetLife's Death Claims Office on February 12, 2002; and

WHEREAS, Metropolitan Life Insurance Company was informed of Gertrude Gregory's death upon receipt of her death certificate on March 25, 2002; and

WHEREAS, the parties have reached an agreement with regard to the payment of the death benefit proceeds under the Contract and have requested, that the proceeds be paid in equal shares to John Bowe and Karen Moore as beneficiaries under the Contract.

NOW THEREFORE, in consideration of the payment of the death benefit proceeds under the Contract, in equal shares to John Bowe and Karen Moore individually, their estates, and anyone claiming under them (hereinafter collectively referred to as the "Releasors"):

1.    The Releasors hereby release, and forever discharge MetLife, and its representatives, including without limitation, past and present officers, directors, employees, account representatives, agents, successors, assigns, subsidiaries, related partnerships and corporations, and each of them (hereinafter collectively referred to as "Releasees") from any and all claims, causes of action, rights, judgments and demands of any kind whatsoever which Releasors may have or claim to have which arise out of or are in any manner whatsoever, directly or indirectly, connected with or related to the Contract, including, but not limited to, any claims for breach of contract, negligence, bad faith refusal to pay policy benefits, fraud, misrepresentation and or, any alleged claims Releasors might have under the Insurance Code of the State of Florida.

2.    The Releasors acknowledge that payment of the death benefit proceeds to each of them individually and in equal shares, constitutes full satisfaction and discharge of all of the claims, demands, sums of money, actions, rights, causes of action, debts, obligations and liabilities set forth in Paragraph 1. In this connection, Releasors warrant, represent and agree that the sole consideration for executing this Release and for releasing said claims, demands, sums of money, actions, rights, causes of action, debts, obligations and liabilities is the payment of the death benefit proceeds, in the agreed manner.

08/16/02  FRI 13:57  [TX/RX NO 9910]  ⧄004

3. The Releasors further warrant, represent and agree that in executing this Release, Releasors do so with full knowledge of any and all rights which Releasors may have with respect to the controversies herein compromised and with regard to the facts relating to said controversies and with respect to the rights and asserted rights arising out of said facts.

4. The Releasors further state that they are not relying and have not relied on any representation or statement made by Releasees, or any of them, with respect to the facts involved in said controversies or with regard to Releasors' rights or asserted rights. Releasors hereby assume the risk of all mistakes of fact with regard to said controversies and with regard to all facts which are now unknown to Releasors relating thereto.

5. Immediately upon execution of this Release, any and all prior agreements, contracts, covenants, and undertakings, relating to the Contract, shall be null and void and shall be deemed in all respects by all the parties to be superseded by this Release. This Release embodies the entire terms and conditions of the Release of Claims herein described and is the complete Release among the Releasors. Any and all prior agreements, undertakings, contracts, understandings, correspondence, conversations or memoranda are null and void.

6. The Releasors specifically warrant and represent that they have not made any assignment or transfer of any right, claim, demand or cause of action covered by this Release.

7. The Releasors state that no promise or inducement for this Release has been offered by MetLife except as herein set forth.

8. The Releasors acknowledge that they have availed themselves of the advice of counsel prior to signing this Release or herewith waive the right to seek such advice.

9. The Releasors represent that they will keep the terms and substance of this Release strictly confidential and will not disclose the terms, conditions and, or substance of this Release to any person, firm, corporation or government agency.

10. This Release may not be modified, except by written instrument signed by the parties hereto.

11. Any dispute arising out of this Release shall be governed by the laws of the State of Florida

RELEASORS ACKNOWLEDGE THAT THEY HAVE READ THIS GENERAL RELEASE AND THAT THEY FULLY KNOW, UNDERSTAND AND APPRECIATE ITS CONTENTS AND THAT THEY EXECUTE THE SAME VOLUNTARILY AND OF THEIR OWN FREE WILL.

IN WITNESS WHEREOF, Releasors have executed this Release as of the date hereinafter appearing.

DATED: _____

_____
John Bowe

Sworn to before me this _____
Day of _____, 2002

_____
Notary Public

DATED: *July 25, 2002*

_____
*Karen Moore*
Karen Moore

Sworn to before me this  *25th*
Day of *July*_____, 2002

_____
Notary Public

Susan G. Hazen
Notary Public
My Commission Expires
April 17, 2009

08/01/2002 11:54    212-578-6447          METLIFE            PAGE 03
07/25/2002 14:47    0000000002          TQTQTQTQT          PAGE 01

# MetLife

Claimant's Statement For Deferred Annuity Death Claims

RECEIVED-TULSA JUL 29 PM 12:

To process your claim as quickly as possible, we need personal information about the beneficiary as well as information about the deceased annuitant or owner. Each beneficiary must submit a separate statement to comply with IRS regulations and Federal law. Please review the instructions on the back of this form.

## A. Deceased Annuitant or Owner Information:

1. Name  _Gertrude Gregory_

2. Legal Residence  _11290 SE 175 Case_

3. Marital Status  ☐ Single  ☑ Married  ☐ Widow/Widower  ☐ Separated  ☐ Divorced

4. Please list all annuity contract/certificate numbers on which claim is being made. (Also list life insurance policies):

_mq225204_

## B. Beneficiary Information (Owner Information, if Claim is Payable to Owner):

NOTE: If the Beneficiary (Owner) is an estate, a trust, a minor, or an incompetent person, please see the instructions on the back of this form.

1. Name (please print or type)  _John Boyce_

2. Legal Residence  _12 Dandview Acres_
   _Seabrook NH 03874_

3. Social Security No.  _021 54 0906_    Trust/Estate Tax ID No. _____

4. Date of Birth  _12 / 29 / 62_    ☑ Male  ☐ Female    Citizen  ☑ Yes  ☐ No

5. Daytime telephone number (in case we need to contact you)  _(978) 691-2046_

6. Your relationship to the deceased:  ☐ Spouse  ☐ Child  ☑ Other (specify)  _nephew_

## C. Additional Requirements:

1. Please furnish us with a certified copy of the death certificate.

2. Attach the State Tax Waiver, if needed (see instructions on the back of this form).

3. Return the annuity contract(s)/certificate(s) or, if unavailable, explain why: _____

4. Complete and attach the enclosed Annuity Death Claim Election Form to select your payment option.

*The information I have given is, to the best of my knowledge, true and accurate. I know it is a crime to fill out this form with information I know is false or to leave out facts I know are important.*

Your Signature  _John B_          Date  _7/26/02_

Metropolitan Life Insurance Company, New York, NY
DCAJINCLAIM/STDCLWT (0590) Printed in U.S.A.

08/01/2002  11:54   212-578-6447           METLIFE                    PAGE  04
07/25/2002  14:47   0000000002            TGTGTGTGT                  PAGE  02

RECEIVED·TULSA

2002 JUL 29  PM 12: 11

# Instructions

This Statement must be completed by the beneficiary (or owner, for contracts providing payment to an owner at the annuitant's or joint owner's death), who is submitting a claim under this annuity contract.

### Section A - Information About The Deceased

Please complete the information requested in this Section and list the annuity contract number(s) or annuity certificate number(s) on which you are submitting a claim.

### Section B - Information About The Beneficiary Who Is Completing This Statement

- All the information requested about the beneficiary (Name, Social Security Number, Date of Birth, Address, Telephone Number, Relationship) should be entered. The beneficiary's Social Security Number or Tax Identification Number (item 2) is especially important.

- If there is more than one beneficiary, a separate Statement should be completed by each beneficiary.

- If the Estate is beneficiary, this Statement must be completed by the executor or administrator of the Estate. The executor must also submit a copy of the Letters Testamentary to prove appointment as executor of the deceased's estate. The Estate's Federal Tax Identification Number must also be entered.

- If the beneficiary is a Trust, this Statement must be completed by the person acting as Trustee for the Trust. The Trust's title page and Trustee appointment page showing signatures, must be submitted. The Trust's Federal Tax Identification Number should be entered.

- If the beneficiary is a minor or mentally incompetent person, we require a Court-Appointed Guardian to accept payment for the benefit of the beneficiary. As a general rule, minors or mental incompetents do not have the legal capacity to accept payment in satisfaction of a contractual obligation. The Social Security Number of the minor or incompetent person should be entered and a copy of the court order appointing guardianship should be submitted.

- If the contract has been collaterally assigned, this Statement should be completed by the beneficiary and the collateral assignee. A separate statement signed by both parties should be submitted showing the extent of the collateral assignee's interest in the contract.

- If the beneficiary of record is deceased, please furnish a certified copy of the beneficiary's death certificate.

### Section C - Additional Requirements

Various States (CT, IN, KY, LA, MI, MT, NH, NJ, NY, NC, ND, OH, OK, OR, RI, SC, SD, TN, WI) have regulations on the transfer of funds (Tax Waiver) at the time of death. Information about these regulations and how to secure a Tax Waiver, when required, can be obtained from the Inheritance Tax Division of the State in which the annuitant or owner resided at the time of death.

The processing of this claim will be facilitated if the annuity contract(s) or certificate(s) is submitted with this completed Statement, certified copy of the death certificate, and a copy of the Tax Waiver or Consent to Transfer Funds issued by the State where the deceased resided.

# MetLife    Non-Qualified Annuity Death Claim Election Form

Please select an option below, sign this form and return it with the Claimant's Statement for Deferred Annuities.
Consult a tax advisor before making an election. For option C please sign the tax withholding election on the back.

**A.** ☐ **Annuity Contract Continued** – If You Are The Sole Beneficiary And The Spouse Of The Deceased
Owner, You May Continue The Annuity Contract As Owner.

As spouse of the deceased, and sole beneficiary of this annuity contract, you may elect to become the contract
owner (and annuitant, if the deceased was also the annuitant). You will be able to exercise all contract rights,
and continue to defer Federal income tax. Please designate your beneficiary below:

| Beneficiary Name | Social Security Number | Relationship to me | Date of Birth |
|---|---|---|---|
| | | | |

**B.** ☐ **Annuity Income Payments** – Election To Receive The Claim Payment As Income Payments

We will pay you the death claim amount as income payments – monthly, quarterly, semi-annually, or annually.
Such income payments must begin no later than the first anniversary of the date of death, and must be
distributed over your lifetime, or a fixed number of years, not in excess of your life expectancy. If you select
this option, we will send you quotations of the annuity income amounts payable, and the taxable portion of each.

**C.** ☒ **Full Claim Payment** – Election To Receive The Taxable Annuity Claim Payment Now

We will send you the annuity death claim payment in a single sum, and report the taxable portion of the claim
payment as taxable income (on Form 1099-R) for the calendar year of payment. If the amount of the claim
payment is $7,500 or more, we will open a Total Control Account® Money Market Option in your name as
soon as your claim is approved. This Account allows you to access your money immediately, simply by writing
a check (minimum $250). The Total Control Account credits competitive interest rates, comparable to a money
market account, and is fully guaranteed by MetLife. The Account is free, and there are no penalties for
withdrawing any or all of your money. If your claim payment is less than $7,500, the Total Control Account
is not available, and a check will be issued. Under either method of claim payment, we will report the
portion that is includible as taxable income for Federal income taxes, for the calendar year in which it is
processed. If you elect this option, please complete the withholding election on the back of this form.
NOTE: ☐ Mark this box to receive a check instead of the Total Control Account Money Market Option.

**D.** ☐ **Election To Receive The Death Claim Within Five Years of the Date Of Death** (Not Available For Annuity
Contracts Issued Before January 18,1985)

If you have not chosen Option A, B, or C above you must receive the entire claim payment in a single sum by
the 5th anniversary of the deceased's date of death. If this is a variable annuity claim payment, the entire
account balance will continue in the same investments in effect on the date of death, and will be subject
to investment risk, until the claim payment is made. You will not be able to request transfers, partial
withdrawals, or exercise any other contractual rights. In addition, after the first anniversary of the deceased's
date of death, you cannot elect to receive annuity income payments (Option B). This deferral option is only
available for annuity contracts issued January 18, 1985 or later.

Your Signature                                                          Date   7/26/02

Metropolitan Life Insurance Company, New York, NY
DCANNELECTNQ (0598) Printed in U.S.A.

18000218899 (0598)

## Tax Withholding Election

Under current Federal income tax law, MetLife is required to withhold 10 percent of the taxable portion of annuity death claim payments for Federal income taxes, unless you elect not to have any withholding.

If you elect NOT to have withholding apply to this death claim, or if you do not have enough Federal income tax withheld, you may be responsible for paying estimated taxes. You may incur penalties under the estimated tax rules if your withholding plus the estimated taxes you have paid, are not sufficient to satisfy your tax liabilities.

Some States require us to withhold State income tax, when we withhold Federal income tax.

Please check A, B, or C below, enter your Social Security Number, sign and date your election and return it to MetLife.

A _____ I elect NOT to have Federal income tax withheld from the taxable portion of my claim payment.

B _____ I elect to have 10 percent Federal income tax withheld, and any State income tax withheld (where required), from the taxable portion of my claim payment.

C _✓_ I elect to have MORE than 10 percent Federal income tax withheld from the taxable portion of my claim payment. Please withhold _50_ percent.

**Name and Address (Please Print)**

John Bowe

12 Dandiview Acres

Seabrook  NH  03874

Annuity Contract Number(s) M922520'

My Social Security Number is 021 - 54 - 29 36

Date 7/26/02        Signature

08/01/2002  11:54    212-578-6447           METLIFE                    PAGE   07
07/25/2002  14:47    0000000000P            TQTQTQTQT                  PAGE   05

# MetLife                    IRA Annuity Death Claim Election Form

Please select an option below, sign this form and return it with the Claimant's Statement for Deferred Annuities.
Consult a tax advisor before making an election. For option C, please sign the tax withholding election on the back.

*Note: If the deceased had begun Minimum Distributions from this IRA (required at age 70½), you*
*cannot select an option that reduces such Minimum Distributions each year, unless you are the*
*spouse of the deceased.*

**A. ☐ Annuity Contract Continued** - If You Are The Sole Beneficiary And The Spouse of the Deceased,
You May Continue The Annuity Contract At Your Own IRA.

As spouse of the deceased, and sole beneficiary of this IRA annuity contract, you may elect to become owner by
making this IRA annuity, your own IRA. You will be able to exercise all contract rights, and, if you are under
age 70½, continue to defer Federal income tax. Please designate your beneficiary below:

_____          _____      _____      _____
Beneficiary Name                      Social Security Number        Relationship to Me    Date of Birth

**B. ☐ Annuity Income Payments** - Election To Receive Income Payments

We will pay you the IRA death claim as annuity income payments - monthly, quarterly, semi-annually or
annually. Such income payments must begin no later than December 31, of the year following the year of death,
and must be distributed over your lifetime, or a fixed number of years, not in excess of your life expectancy. If
you select this option, we will send you questions on the annuity income amounts payable.

**C. ☒ Full Claim Payment** - Election To Receive The Taxable IRA Annuity Claim Payment Now

We will send you the IRA death claim payment in a single sum, and report the entire IRA amount as taxable
income on Form 1099-R. If the amount of the claim payment is $7,500 or more, we will open a Total Control
Account* Money Market Option in your name as soon as your claim is approved. This Account allows you
access to your money immediately, simply by writing a check (minimum $250). The Total Control Account
credits competitive interest rates, comparable to a money market account, and is fully guaranteed by MetLife.
The Account is free, and there are no penalties for withdrawing any or all of your money. If your IRA claim
payment is less than $7,500, the Total Control Account is not available, and a check will be issued. Either
method of IRA claim payment will be reported as taxable income for the calendar year in which it is processed.
If you elect this option, please complete the withholding election on the back of this form.

Note: ☐ Mark this box to receive a check instead of a Total Control Account Money Market Option.

**D. ☐ Deferral** - Election To Defer Receiving The IRA Death Claim Payment For Up To 5 Years

You may defer receiving the IRA death claim payment for now. However, you must receive the entire claim
payment in a single sum before December 31 of the 5th anniversary year following the deceased's date of death.
If this is a variable annuity IRA claim payment, (FIRA or Vestmet), the entire account balance will
continue in the same investments in effect on the date of death, and will be subject to investment risk,
until the claim payment is made. You will not be able to request transfers, partial withdrawals, or exercise any
other contractual rights. In addition, after December 31 of the year following the year the IRA owner died, you
cannot elect to receive annuity income payments (option B).

_____          _____
Your Signature                             Date   7/26/02

Metropolitan Life Insurance Company, New York, NY
BCIANNIRACTRA (0898) Printed in U.S.A.

18000318002 (0898)

## Tax Withholding Election

Under current Federal income tax law, MetLife is required to withhold 10 percent of the taxable portion of annuity death claim payments for Federal income taxes, unless you elect not to have any withholding.

If you elect NOT to have withholding apply to this death claim, or if you do not have enough Federal income tax withheld, you may be responsible for paying estimated taxes. You may incur penalties under the estimated tax rules if your withholding plus the estimated taxes you have paid, are not sufficient to satisfy your tax liabilities.

Some States require us to withhold State income tax when we withhold Federal income tax.

Please check A, B, or C below, enter your Social Security Number, sign and date your election and return it to MetLife.

A _____ I elect NOT to have Federal income tax withheld from the taxable portion of my claim payment.

B _____ I elect to have 10 percent Federal income tax withheld, and any State income tax withheld (where required), from the taxable portion of my claim payment.

C __✓__ I elect to have MORE than 10 percent Federal income tax withheld from the taxable portion of my claim payment. Please withhold _20_ percent.

Name and Address (Please Print)

_John Bowe_
_12 Dandiview Acres_
_Seabrook NH  03874_

Annuity Contract Number(s) _M9225204_

My Social Security Number is _021 – 54 – 2996_

Date _7/26/02_          Signature _John Bowe_

RECEIVED-TULSA
2002 JUL 29 PM 11:11

08/01/2002  11:54    212-578-6447              METLIFE                          PAGE  02

RECEIVED-TULSA

2002 JUL 29  PM 12: 11

John Bowe
12 Dandiview Acres
Seabrook, NH  03874


July 26, 2002


Ms. Rita Anderson
MetLife
PO Box 22069
Tulsa OK  74121-2069


Dear Ms  Anderson:

Per our discussion yesterday, enclosed please find a completed Statement for Deferred Annuity Death
Claim Form as request for payment of my aunt's annuity contract to which I am the beneficiary.  Also
enclosed are two Election forms in which I have chosen the lump sum Full Claim Payout.  I believe that the
annuity contract is a Non-Qualified Annuity.  The MetLife office sent me that form as well as an election
form for IRA Annuity Death Claim.  I filled out both of them and you can discard the one which will not
apply.

Also please note that the general release form enclosed has not been signed.  I have put a line through each
page and marked the signature page as "not applicable".  I am not willing to accept the change of
beneficiary form that was filled out by my aunt's husband under the power of attorney on the day before
her death and received in your office six days after her death.

Please process the annuity payment with me (John Bowe) as the sole beneficiary of the contract.  Please
feel free to call me if you have any questions.  I can be reached during the day at my office.  The direct
number to reach me is 978-691-2046.

A certified copy of the death certificate was received by MetLife on March 25, 2002 as indicated in the
General Release document.  If you have any questions regarding the death certificate, please notify Chris
Himmler in the Summerfield, Florida MetLife office.  He can be reached at 352-245-4611 x12.

I appreciate your attention to this matter and I look forward to hearing from you regarding this claim.
Thank you for your assistance.

Sincerely,

John Bowe

Cc: Chris Himmler, MetLife


EXHIBIT I